Dore, J.
(dissenting). The business emergency rent control law here applicable (L. 1945, ch. 314, as amd. by L. 1946, ch. 273, effective March 30, 1946) was passed to prevent exaction of unreasonable and oppressive agreements for payment of rent for business space under prevailing conditions that caused, as the act declares, a breakdown in the normal processes of bargaining and freedom of contracts. In enacting the statute, the Legislature obviously intended to protect prospective tenants out of possession as well as tenants in possession on that date. Indeed, tenants in possession were in far less need of statutory protection than persons out of possession seeking business space. To get space, the latter were under greater compulsion to submit to oppressive demands of landlords having the commodity that by governmental prohibition, owing to war, had been made extremely scarce.
This aspect of the public policy of the State is clearly indicated in section 4 of the act effective March 28,1945 (L. 1945, ch. 314). That section as amended by chapter 273 of the Laws of 1946, applicable when the lease in question was made, was divided into four paragraphs. The first begins with the statement that a rent exceeding emergency rent “ may within the limitations specified by this section, be fixed by arbitration or by the supreme court.” That and the second paragraph set forth the authorized methods of determining reasonable rent. The third paragraph, so far as relevant, provided: *288 “ In lieu of the provisions contained elsewhere in this section for determining and fixing rent, the tenant and the landlord may fix a reasonable rent by written agreement, signed by both * * * provided: (a) that snch tenant used or occupied the same space on the effective date of this act; * * (Italics added.) That permission to fix the reasonable rent by agreement was expressly limited to cases in which the tenant “ used or occupied the same space ” on the effective date of the section. Accordingly when, as here, a tenant was out of possession on January 30, 1947, the date of the lease herein, there was no permission but it was then illegal for a landlord and such proposed tenant to fix the rent in excess of the emergency rent by consent.
Such provisions of the law were kept clearly in mind when this court vacated the arbitrator’s award herein; in our memorandum decision we expressly pointed out that in this case the “ rent in excess of the emergency rent was by consent of the landlord and a tenant not in possession on the effective date of the statute ” (italics added). We then held that to “ give effect to the declared public policy of the State ”, the order appealed from denying this tenant’s motion to vacate the arbitrator’s award should be reversed, and the award and the order confirming the same should be vacated (Matter of Viro Realty Corp. [Belmont], 272 App. Div. 1014). The Court of Appeals unanimously affirmed without opinion, the State Reporter, however, pointing out that this court had held that the rent was “ by consent ” as above stated and therefore violative of public policy (297 N. Y. 871).
That order of reversal vacated only the illegal pro forma award as to the amount of rent; it did not vacate or purport to make void the lease. In the rider annexed to the third page of the lease, the parties mutually agreed that the emergency rent was $431.25 a month, that the landlord had given notice to that effect and the parties “ mutually understood and agreed that pursuant to the permissible provisions of the said statute [emergency rent law], a rent exceeding the ‘ emergency ’ rent has been determined by arbitration between the parties hereto; that the award * * * fixing the reasonable rent * * * herein * * * in excess of the ‘ emergency ’ rent and in the amount specified in this lease has been ratified * * * fixing the reasonable rent * # * in the sum of * * # ($10,-000) ” and that that amount was inserted in the lease after the award and its acceptance by the parties.
*289 The parties herein have, therefore, lawfully agreed upon every term of the lease except the amount of the rent; they have not (as they expressly agreed to) fixed a rent exceeding the emergency rent, under “ the permissible provisions ” of the statute; the lease therefore under the law applicable now survives except as to the amount of rent illegally fixed in excess of emergency rent.
When a lease under the emergency rent laws is in all respects valid except the amount of rent in excess of emergency rent, the lease itself survives but only the emergency rent may be paid until the court otherwise determines a different rent. That rule was applied to sustain, in every term except the amount of rent, a twenty-one-year lease in Whiting v. Tower's Stores, Inc. (273 App. Div. 1001). In that case a twenty-one-year lease was made between the plaintiff landlord and defendant tenant on April 5,1945, for a rent in excess of the emergency rent but without complying with the provisions of section 4 of the Commercial Rent Law, requiring a statement that the landlord advised the tenant of his right to continue payment of the emergency rent until modified by arbitration or the Supreme Court and a statement that within sixty days the tenant could cancel the lease. The landlord sued not for the rent stipulated in the lease, concededly illegal, but for the emergency rent and obtained summary judgment against the tenant. On appeal to this court the tenant, seeking to escape liability under the twenty-one-year lease maintained (1) that the lease was invalid because it failed to contain the statements required by section 4 of the act, and (2) that as the rent was accordingly illegal when the contract was made, the entire instrument must fall as it was indivisible. This court unanimously affirmed the order granting the landlord’s motion for summary judgment against the tenant. In that case we fully considered the argument now made that the lease was entire and indivisible and that if the rent was struck out as illegal, then the entire instrument must fall as it was indivisible, nevertheless, we enforced the landlord’s suit not for the rent stipulated which was concededly illegal under the emergency rent laws but for the emergency rent..
In that case the landlord was suing to recover rent from October 1, 1945 to and including August 1, 1946, during all of which time the emergency rent laws were in effect. Accordingly, there was not presented to us and we did not have to pass upon the question as to what the rental would be after the emergency rent laws terminated. Similarly, in this case the issue is being presented to us during the pendency of the emergency rent *290 laws and we are not called upon to pass upon what the rental may be after the emergency terminates. The original $10,000 rent consented to has been vacated as illegal and that sum may not be reinstated at least during the emergency. If and when the emergency rent laws are repealed, the parties will be free and unimpeded by the provisions of such laws with respect to an agreement as to the rent payable. The emergency rent laws were intended to be remedial, not to destroy contracts otherwise legal but to prevent enforcement of such parts as are illegal in contravention of the laws while they are applicable. We are not now called upon to determine what may happen on future contingencies which under the terms of this lease at least may never arise. Accordingly, it is not necessary and it would be inappropriate for us to pass upon states of facts and of law not presented in this record with regard to supposititious ninety-nine-year leases expiring long after the emergency rent laws have been repealed. We have no such lease before us and the emergency rent laws are still in existence. Indeed, if we made any ruling about such supposititious states of fact and law what we said would be mere dicta. It is never important what a court says, but it is of great importance what a court does. The only thing this court now can do is to pass upon the state of facts presented in this record on the law presently applicable.
In Warfield v. Bellanca Robe Corp. (186 Misc. 910, affd. 187 Misc. 731 [App. Term]), and by this court (271 App. Div. 781), it was also held that the emergency rent laws did not render leases unenforcible because provision is made for rent in excess of the emergency rental, but the landlord is limited to the emergency rent.
On the argument of the present appeal the landlord expressly refused to agree to any further arbitration other than what was vacated as illegal. In the light of all the facts disclosed, this refusal is not surprising. This landlord does not want a bona fide arbitration, the only kind permissible under the act, or a determination by the Supreme Court pursuant to the act fixing a reasonable rent in excess of the emergency rent. The landlord wants the rent procured by the pro forma consent arbitration or it wants the tenant evicted as a trespasser or a squatter without any right of possession in spite of the fact not seriously brought in question that the tenant after entry of possession has spent in excess of $30,000 in improving the landlord’s premises.
The landlord’s complaint, however, seeking to achieve this result by a declaratory judgment of this court is not predicated *291 on fraud and contains none of the allegations essential to a cause of action for fraud. This case was disposed of without trial on motions for judgment on the pleadings and summary-judgment. No facts are alleged to support an inference that the tenant from the outset had no intention of going into possession under the terms agreed on or that his acceptance of such terms was mere sham. On the contrary, the record indicates that the tenant paid the down payment of $5,000, the parties agreed to arbitrate before the named arbitrator, the pro forma arbitration was had and the lease was signed all on the same day, January 30, 1947; the arbitrator’s award was confirmed by order of the Supreme Court the next day; the tenant entered into possession two days thereafter, viz., on February 2, 1947, and thereafter ^improved the premises for the purpose of conducting his business there by expenditure of more than $30,000. That last allegation is denied by the landlord only to the extent of denying knowledge or information sufficient to form a belief. But in an affidavit on the motion for summary judgment, the tenant swears that while he got possession of the premises in February, he did not open for business until March 26, 1947, because of the extensive alterations and alleges that the landlord was present by representative often while the alterations were being made. No denial on the landlord’s part is made of these facts. The tenant avers that difficulties arose between the parties only after the tenant had expended the $30,000 for the alterations, when the landlord (breaching another special agreement between the parties) refused to pay $400, one half the cost of installing a false ceiling in the premises. Not till then did the tenant consult an attorney and seek legal relief. In the landlord’s answering affidavit these allegations are not denied. Accordingly, the landlord’s failure in its complaint to claim or allege fraud on the tenant’s part is perfectly understandable. This case completely differs from 770-8th Ave. Corp. v. Propper (275 App. Div. 819, decided by this court May 24, 1949) which involved a complaint expressly based on fraud and deceit and containing appropriate allegations therefor.
The landlord in this case has deliberately flouted the emergency rent law and the public policy of the State in order to exact a'rent, twice the amount of the emergency rent, procured by an illegal arbitration from a prospective tenant out of possession who obviously needed the space to conduct his business. If the landlord could procure the $10,000 rental through a bona fide arbitration appraising the real rental value of the premises, it is a fair inference it would not have resorted *292 to the type of arbitration used, which this court and the Court of Appeals have declared was in effect not an arbitration at all but an illegal fixation of rent by consent with a tenant out of possession. On such record the court should not strain presently to release the landlord from a lease which it made, and which pursuant to its own terms and the emergency rent laws was in all respects legal and valid except as to the amount of the rent. The landlord accepted the tenant as a responsible person; accepted the $5,000 deposit as surety of such responsibility; the lease expressly provides that the emergency rent is in the sum of $431.25 per month; the landlord may not now complain that after its illegal scheme to evade the Business Rent Law has been exposed by the courts, it should be relieved of all other obligations of the lease and restored to the status qup ante.
The agreement that ‘ ‘ no rights shall accrue to either party ’ ’ was embodied in the receipt for the $5,000 security deposit. That receipt by its terms provided: “ If the award * * * is rejected by either [landlord or tenant] on or before Jan. 30, 1947, said certified check for $5,000.00 shall be returned to [the tenant] and no rights shall accrue to either party hereto.” That same receipt also provided that until the Supreme Court confirmed the award “ the lease between said parties shall be without any effect ”. On this record it is clear that the award was not rejected by either party on or before January 30, 1947, and that the Supreme Court by its original order on consent of both parties confirmed the award. Thereafter when the dispute arose after the tenant in good faith had spent large sums on the premises, this court and the Court of Appeals struck down the award as illegal. In that state of facts to say that the agreement should be enforced according to its terms and that the lease was operative to bind the parties, wholly or not at all, is by inference to say that the tenant may or should waive the protection of the statute. The statute however expressly provides the tenant may not waive its provisions (Business Rent Law, L. 1945, ch. 314, § 12, as amd.). In the absence of proof by trial or affidavit or even of any claim in the pleading, there is no warrant for saying that this tenant seeks to make affirmative use of the statute to aid a preconceived fraudulent intent to breach the contract.
The landlord is not being ousted from its property. Like many other landlords it is receiving from the property the rent the law permits it to receive and no more. The statute provides a legal means whereby the landlord, if it has the necessary proof, may apply to the Supreme Court for a reasonable rent *293 in excess of the emergency rent. All this landlord is being deprived of is the opportunity to receive for ten years a rent illegally exacted or get back its property entirely free from the lease.
Interpretation of the Business Rent Law should be designed to carry out the intent of the law-making body and prevent the exaction of illegal rentals under leases. So-called “ arbitrations ” such as the one herein are the method most frequently used by landlords who seek to evade the emergency rent laws and secure rentals far in excess of either the emergency or the reasonable rents. Judgment in favor of this landlord would be an announcement to all others who engage in similar practices that the worst that can happen to them under the law is to have the fraudulent arbitration set aside and get their properties free from the burden of any lease with the added advantage of any improvements the tenant made to the premises while in possession. This is to give a premium for evasion and, however unintentionally, to thwart rather than to further the chief purpose of the act.
When the parties agreed to a rent fixed by arbitration as an essential term of the lease and that “ no rights shall accrue to either party ” unless the rent fixed by the arbitrator was accepted, such agreement by its terms implied that the arbitration was to be bona fide and not sham. Any other form of promise now enforced against the tenant amounts to enforcement of a waiver by the tenant of the provisions of the statute although waiver by the tenant is' expressly prohibited. In Moncel Realty Corp. v. Whitestone Farms (188 Misc. 431, affd. 272 App. Div. 899 [1st Dept.]), the landlord sued to recover rent for commercial space fixed by a lease; the tenant’s defense was that the rent was unreasonable and in excess of the rent allowed under the emergency rent laws. It was held that the tenant’s agreement in the lease that the rent was “ reasonable ” did not estop the tenant from setting up the defense, because section 12 of the Commercial Rent Law (L. 1945, ch. 3, as amd.) forbids any waiver of its provisions by the tenant and estoppel could not be based on such waiver. In that case, as in this, the landlord urged that the tenant had obtained advantages based upon the agreement and should not be permitted to claim otherwise. As to that contention the Appellate Term of this Department said (p. 434):
“ The manifest purpose of this enactment is that the provisions of the act shall be available at all times and in consequence the tenant may not be charged with having waived the right to *294 plead that the rent demanded is unjust, unreasonable and oppressive and exceeds the emergency rent as defined in the statute.
‘ ‘ This provision is the public policy of the State with respect to waiver. ‘ Public policy is the interest of others than the parties ’ and that interest may not be set at naught by the acts or conduct of any party alone (Beasley v. Texas & Pacific Railway Co., 191 U. S. 492, 498).” The court further held that such claim of estoppel “ would be, in effect, a circumvention ” of the law. This court unanimously affirmed the judgment in the tenant’s favor (272 App. Div. 899) without prejudice to an action for the reasonable value of the premises under the Commercial Rent Law.
By chapter 535 of the Laws of 1949, effective April 11, 1949, amendments were made to the Emergency Business Space Rent ControlLaw which, inter alia, now permit a tenant out of possession, as well as a tenant in possession, to fix a reasonable rent by consent with the landlord by written agreement, provided the written agreement complies with the three conditions continued without change from the prior law. The 1949 amendments clearly make no change in the law applicable to this case; namely, chapter 314 of the Laws 1945, as amended by chapter 273 of the Laws 1946. In any event, the written agreement herein does not comply with the third condition requisite for any such fixation of rent by consent, namely, that the tenant within sixty days may cancel the agreement by notice to the landlord. Accordingly, even under the 1949 amendments the consent herein to a rent in excess of the emergency rent would be illegal.
Apparently the whole court is in agreement that there are no real issues of fact presented in this record and that on uncontested essential facts judgment may be granted either to plaintiff or defendant. Accordingly, for the reasons stated I dissent and vote: (1) to affirm the order of October 25, 1948, denying plaintiff’s' [landlord’s] motion for judgment on the pleadings; (2) to reverse the order of December 15, 1948, denying defendant’s [tenant’s] motion for judgment on the pleadings, and (3) to grant defendant judgment denying the relief sought by plaintiff and declaring defendant tenant of the leased premises pursuant to the terms of the lease except that the rent is the emergency rent of $5,175 per annum, payable in monthly instalments of $431.25 during the term or until such time as a reasonable rent in excess of the emergency rent shall be fixed pursuant to the provisions of the Business Rent Law, or until termination of the applicable emergency rent law.